ROBERT J. ROSATI, #112006
e-mail: robert@erisalg.com
6485 N. Palm Ave., Ste. 105
Fresno, CA 93704
Telephone: (559) 478-4119
Facsimile: (559) 478-5939

Attorney for Plaintiff, SALLY BARR

UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALLY BARR,<br>Plaintiff,<br>v.<br><br>AETNA LIFE INSURANCE COMPANY,<br>Defendant. | No.: '17CV0616 MMAJMA<br>**COMPLAINT** |

Plaintiff, SALLY BARR ("Plaintiff" or "Barr") alleges as follows:

**JURISDICTION**

1. Plaintiff's claim for relief arises under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. section 1132(a)(1). Pursuant to 29 U.S.C. section 1331, this court has jurisdiction over this action because this action arises under the laws of the United States of America. 29 U.S.C. section 1132(e)(1) provides for federal district court jurisdiction of this action.

## VENUE

2. Venue is proper in the Southern District of California because Plaintiff is and was a resident of Carlsbad, in the County of San Diego, the State of California, when Defendant terminated her claim for benefits and denied her appeal of that termination. Therefore, 29 U.S.C. section 1132(e)(2) provides for venue in this court.

## PARTIES

3. Plaintiff is, and at all times relevant hereto was, a participant, as that term is defined by 29 U.S.C. section 1002(7), of The Long Term Disability component program of the Allergan Supplemental Benefit Plan ("The Plan") and thereby entitled to receive long term disability ("LTD") benefits therefrom. Plaintiff was a participant because she was an employee of Allergan Inc. for whose employees' benefit The Plan was established.

4. Defendant Aetna Life Insurance Company ("Aetna") issued long term disability Group Policy No.: 476735("The Policy") to Allergan, Inc. Aetna thereby insured The Plan for long term disability benefits and is obligated to provide all benefits claimed, and acted on behalf of The Plan in all matters alleged herein, including making the decisions to terminate Plaintiff's LTD benefits and to deny her administrative appeal of that decision.

## CLAIM FOR RELIEF

5. Plaintiff was employed by Allergan, Inc. as a Senior Manager, Global Regulatory Affairs.

6. Barr became disabled effective October 22, 2012.

7. The Policy provides long term disability benefits after an elimination period of 180 days, for which a person under the age of 62 at the time the disability occurred, as was Plaintiff herein, such benefits potentially could continue to the Social Security Normal Retirement age, which, for plaintiff would be age 67.

8. The following pertinent definitions and provisions are included in The Policy:

A. Disability is defined as:

"Total Disability. From the date that you first become disabled and until Monthly Benefits are payable for 24 months, you will be deemed to be totally disabled on any day if, as a result of a disease or injury, you are unable to perform with reasonable continuity the substantial and material acts necessary to pursue your own occupation and you are not working in your own occupation.

After the first 24 months that any Monthly Benefit is payable during a period of disability, you will be deemed to be totally disabled on any day if, as a result of disease or injury, you are not able to engage with reasonable continuity in any occupation in which you could reasonably be expected to perform satisfactorily in light of your age, education, training, experience, station in life, and physical and mental capacity that exists within any of the following locations:

- a reasonable distance or travel from your residence in light of the commuting practices of your community; or
- a distance or travel time equivalent to the distance or travel time you traveled to work before becoming disabled; or
- the regional labor market, if you reside prior to becoming disabled in a metropolitan area."

B. "Own Occupation" is defined as:

"Any employment, business, trade or profession and the **substantial and material acts** of the occupation you were

regularly performing for your employer when your period of disability begins. **Own occupation** is not necessarily limited to the specific job you performed for your employer."

C. "Substantial and Material Acts" are defined as:

"The important tasks, functions and operations generally required by employers from those engaged in your **own occupation** and cannot be reasonably omitted or modified."

"In determining what 'substantial and material acts' are necessary to pursue your **own occupation**, we will first look at the specific duties required by your employer. If you are unable to perform one or more of these duties with reasonable continuity, we will then determine whether those duties are customarily required of other employees engaged in your **own occupation**. If any specific, material duties required of you by your employer differ from the material duties customarily required of other employees, engaged in **your occupation**, then we will not consider those duties in determining what 'substantial and material acts' are necessary to pursue your **own occupation**."

D. Disabilities primarily caused by "Mental Health or Psychiatric" conditions have the following limitation:

"A period of disability will end after 24 months if it is determined that the disability is primarily caused by:

* a Mental Health or Psychiatric condition, including physical manifestations of the conditions, but excluding those conditions with demonstrable, structural brain damage. . . as described in the most

current edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM), published by the American Psychiatric Association."

9. The Policy explicitly adopts well-established legal standards under California law and thus under The Policy total disability as contained in a general disability clause is that which prevents the insured from engaging in her own or any occupation or performing any work for compensation and which prevents her from working with reasonable continuity in her customary occupation or in any other occupation in which she might reasonably be expected to engage in view of her station and physical and mental capacity. Therefore, California law requires an insurance company to consider: (A) whether the claimant could reasonably be expected to work; recognizing that the fact that the insured may do some work or even the fact that she may be physically able to do so is not conclusive evidence that her disability is not total, if reasonable care and prudence require that she desist; (B) given the claimant's physical and/or mental capacity; (C) and her station in life; (D) to perform the "substantial and material" duties of her own occupation or any occupation; (E) with "reasonable continuity;" and (F) in the usual and customary way.

10. Here, Aetna failed and refused to:

A. utilize the proper standard of totally disabled in its communications with Plaintiff.

B. utilize the proper standard of totally disabled in its evaluation of Plaintiff's claim for benefits.

C. provide its medical or vocational evaluators with the proper criteria to evaluate whether Plaintiff is and was totally disabled.

D. Therefore, every evaluation and conclusion Aetna reached terminating Plaintiff's LTD benefits and denying her appeal of that termination was arbitrary and capricious. Aetna failed and refused to apply the proper standard of totally disabled and instead utilized

the more restrictive and legally unenforceable definition from The Policy as set forth in Paragraph 8.A.

11. Plaintiff timely applied for LTD benefits from Aetna.

12. On December 24, 2013, Aetna determined that Barr was entitled to LTD benefits and paid them retroactively for the period from February 18, 2013 through December 31, 2013, and thereafter continued to pay them through September 18, 2014.

**AETNA TERMINATES BARR'S BENEFITS IN 2014**

13. In July, 2014, Aetna caused Barr to be surreptitiously surveilled. Aetna's evaluation of the surveillance evidence was not honest. First, the written report is materially false. Barr's activities of July 17, 2014 go on for about an hour. At the beginning of the hour, Barr is very active using both arms freely. By the end of the hour Barr is quite obviously and quite clearly favoring her left arm, holding it up and out at an unnatural angle. Although Barr's obvious pain behavior is readily apparent on the surveillance video none of the personnel hired by Aetna or employed by Aetna who claimed to have reviewed the surveillance video comment on that fact or note that fact. Thus, it appears that Aetna and its personnel deliberately disregarded the facts in evaluating the evidence they possessed. In fact, the video not only does not prove that Barr is not disabled, it demonstrates that she is disabled. This is underscored by what happened the next day: nothing. Aetna was provided years of records in which Barr explained that sometimes she has good days, but if she overdoes it she pays a price the next day. On July 17, 2014 Ms. Barr had a good day and was physically active for about an hour. But after 30 or so minutes of that hour she was manifesting obvious pain behaviors, and the next day she never left her house.

14. Aetna had an in-house physician, Dr. Robert J. Cirincione, review Barr's records. According to Aetna's diary Dr. Cirincione was initially sent 695 pages of documents to review. According to the diary he spent four hours on his work. According to his "physician review" it appears he read the surveillance report but did

not watch the video, but elsewhere in his review he suggests he did watch it. The surveillance video clearly and obviously shows Barr engaging in clear and obvious pain behaviors. Yet, Dr. Cirincione did not comment on that pain behavior.

15. After Dr. Cirincione submitted his first report and additional information, a letter was received by Aetna about Barr from Dr. Faye Weinstein. According to Dr. Weinstein's letter when Barr performed complex or repetitive tasks she would become emotionally and physically depleted and subsequently would require days of rest for recovery.

16. Dr. Cirincione provided a supplemental report dated September 10, 2014. Therein, Dr. Cirincione reasoned that he had photographs of July 17, 2014, of Barr, of events which he claims occurred on July 15, 2014 and he reasons that on July 17, 2014, Barr was also noted engaging in the same type of activities.

A. He reasoned "On 7/17/14, this would be two days after the 7/15/14, activities. Therefore, on 7/15/14, she performed activities of placing objects into the trunk, closing the trunk, picking up plants, dragging a green trash barrel, and 48-hours later on 7/17/14, she was walking, handling potted plants, cardboard boxes, trash barrel, garden hose and other items. Obviously, the photographic accounts from Claims Bureau USA dated 7/24/14, does not support the days of rests for recovery documented in Dr. Weinstein's letter. Therefore, based on the review of the information provided in my report of 8/27/14, and reviewing the letter of Dr. Faye Weinstein of 7/31/14, the opinion expressed in my report of 8/27/14, is unchanged."

B. The obvious problem with Dr. Cirincione's reasoning in his supplemental report is that Barr was not seen on July 14 or 15 or 18, 2014; she was only seen one day - - on the 17th - - according to the surveillance report and according to the video of the

surveillance. So, Dr. Cirincione's supplemental report is patently unsubstantiated and clearly wrong. Nonetheless, notwithstanding having both the surveillance report and the surveillance video and having Dr. Weinstein's letter and both of Dr. Cirincione's reports, Aetna disregarded Dr. Cirincione's obvious and blatant errors.

17. By letter dated September 19, 2014, Aetna terminated Barr's claim for LTD benefits, effective September 18, 2014, relying upon its erroneous interpretation of the surveillance evidence and upon Dr. Ciricione's erroneous evaluation of the evidence. The letter invited Barr to appeal that decision.

**BARR APPEALS THE 2014 TERMINATION**

18. By letter dated March 17, 2015, Barr appealed the termination of her LTD benefits. The appeal consisted of her lawyer's 86-page appeal letter, and additional medical evidence. The appeal letter explained, in pertinent part: Barr's conditions; summarized the medical records; that Barr's claim was subject to non-preempted California law; discussed the systemic errors of Aetna's vocational assessment; demonstrated that Barr was disabled under the terms of The Policy; and otherwise demonstrated the errors of Aetna's decision and demonstrated that Barr continued to be entitled to benefits under The Policy. The appeal was supplemented on March 24,2015, by Barr's 10-page sworn declaration and on April 2, 2015 by additional medical records and a Functional Capacity Evaluation (dated March 2, 2015).

19. In response to Barr's appeal, Aetna obtained a "Physician review" by Dr. Evelyn R. Balogun, Dr. Balogun's conclusions are without any factual basis and do not constitute substantial evidence because:

A. There are great many errors and flaws in Dr. Balogun's report.

B. The report attributed to Dr. Balogun most likely was actually in its final form prepared by a nurse employed by RRS;

C. Here's the process for an RRS peer review:

i. RRS emails the request for services to the doctor.

ii. RRS provides the doctor with a template specifying the questions to be answered;

iii. After the doctor answers the questions, the answers are reformatted on a template by a RRS nurse;

iv. The doctor doesn't actually see the final report before it is sent out over his or her signature;

v. In answering the questions presented, the doctor attests that "I have used evidence based criteria in support of my final opinion;"

D. Dr. Balogun rather obviously ignored the disabling effects of mental clouding;

E. She also quite apparently limited her evaluation to objective medical evidence in violation of The Policy, and failed to acknowledge that the surveillance report is inconsistent with the video, which demonstrates that the surveillance report is materially false;

F. Dr. Cirincione's reports are also materially false. Yet, those reviews were provided to Dr. Balogun - - and again, according to her, she read them. Nonetheless, she never commented on the fact that Dr. Cirincione obviously misunderstood what he was doing and obviously provided reports that are unfounded in fact.

G. Dr. Balogun was given extensive information about Barr's medications and their side effects. Yet, she was not asked to comment about the disabling effects of these medications;

H. It is not clear from her report whether or not Dr. Balogun saw the surveillance video. She writes in one place that she didn't and in another that she did. This may reflect the fact that the final report

was written by someone else. But, in any event, the report does not track what is actually shown in the video.

I. Dr. Balogun concluded "the surveillance video demonstrates that the claimant maintains an appreciable degree of independence." In fact, the surveillance video demonstrates only that for a limited period of time she's capable of a certain level of activity - - and nothing more.

J. Routinely disregard the facts.

20. By letter dated May 15, 2015, Aetna denied Barr's appeal of the termination of her LTD benefits.

**BARR'S INITIAL LAWSUIT/AETNA'S REINSTATEMENT OF BENEFITS**

21. Plaintiff filed a lawsuit, Case No.: 3:15-CV-01577-H-JMA, in this Court on July 16, 2015.

22. Defendant subsequently agreed to reinstate Plaintiff's LTD benefits and pay benefits under the own occupation definition of disabled and perform a further review of Barr's entitlement to benefits under the any occupation definition of disabled.

**AETNA'S "ANY OCCUPATION" REVIEW**

23. As part of its review of Barr's entitlement to any occupation benefits, Defendant:

A. Required Plaintiff to participate in an FCE.

B. Obtained an in-house physician review by its Dr. Brodie.

C. Obtained a TSA using Fresno, CA as its salary/job availability, instead of Plaintiff's home city of Carlsbad, CA.

D. Conducted surveillance on Plaintiff which showed zero activity.

24. By two letters dated June 2, 2016 and one letter dated June 10, 2016, Defendant denied Plaintiff's LTD benefits under the any occupation definition of disabled.

**BARR'S APPEAL OF THE DENIAL OF ANY OCCUPATION BENEFITS**

25. By letter dated October 28, 2016, Plaintiff appealed the denial of her LTD benefits. In the appeal, Plaintiff incorporated all the information in the first appeal and added:

A. The Policy did not require "clinical "evidence of disability and asked for definition of "clinical evidence."

B. Plaintiff was not seen in the two days that Aetna surveilled her which would not be normal if she weren't disabled.

C. Plaintiff demonstrated the invalidity of Defendant's FCE.

D. Noted that the medical review by Defendant contained no analysis of the medical records, no contact with her physicians, just the statement by Dr. Brodie that "FCE provides full pld (*sic*) capabilities and SDRM/Clinician to send letter to FCE examiner with questions provided by Dr. Brodie."

E. Aetna's vocational assessment was seriously defective – especially since it based the employer/salary in Fresno, CA, not Carlsbad, CA, where Plaintiff lives.

F. Barr's condition did not improve.

G. An update on Barr's functionality and conditions.

H. The SSA's two in-person examination reports which opined that she could not perform any occupation.

26. As part of Aetna's review, it hired – through RRS – Dr. Joseph Rea to perform a peer review of Barr's claim. Plaintiff and her treating physician responded to Dr. Rea's opinion, noting:

A. Barr's physician, Dr. Steven Richeimer, noted his findings as: atypical neuralgia, osteoarthritis of left hip with pain, right hip pain, chronic insomnia, chronic anxiety, entire body neuropathic pain, lower back musculoskeletal pain, severe pain at times over

left sacroiliac joint, and worsening osteopenia. There is impairment. There are limitations. Pain prevents Barr from performing work tasks including sedentary work, focus, concentration, repetitive tasks, sitting for long periods of time, computer typing, etc. He did not envision Barr returning to modified or regular activities and she continued to be disabled and unable to pursue sedentary work.

B. Plaintiff informed Aetna that RRS changes the reviewing physician reports on a standard basis, that Dr. Rea's opinion did not provide for full time work following his restrictions and limitations and that Dr. Rea does not state Barr can work eight hours a day.

27. By letter dated March 15, 2017, Defendant denied Plaintiff's appeal. The denial letter stated that:

A. A new vocational assessment was performed.

B. Dr. Rea read the supplementary opinion of Dr. Richeimer and opined Barr could perform sedentary work and was not disabled from any "reasonable occupation."

28. Plaintiff has exhausted all administrative remedies required to be exhausted by the terms of the Plan and by ERISA.

29. At all times mentioned herein Plaintiff was, and continues to be, totally disabled under The Policy's definition of totally disabled, and therefore entitled to benefits under the terms of The Policy.

30. Aetna is required to provide claimants full and fair reviews of its claims for benefits pursuant to 29 U.S.C. section 1133 and its implementing Regulations. Specifically:

A. The Secretary of Labor has adopted Regulations to implement the requirements of 29 U.S.C. section 1133. These Regulations are set forth in 29 C.F.R. section 2560.503-1 and provide, as relevant

here, that employee benefit plans, including Aetna herein, shall establish and maintain reasonable procedures governing the filing of benefit claims, notifications of benefit determinations, and appeal of adverse benefit determinations and that such procedures shall be deemed reasonable only if:

i. Such procedures comply with the specifications of the Regulations;

ii. The claims procedures contain administrative processes and safeguards designed to ensure and to verify that benefit determinations are made in accordance with governing plan documents and that, where appropriate, the Plan provisions have been applied consistently with respect to similarly situated claimants;

iii. Written notice is given regarding an adverse determination (i.e., denial or termination of benefits) which includes: the specific reason or reasons for the adverse determination; with reference to the specific plan provisions on which the determination is based; a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; a description of the Plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of ERISA following a denial on review; if an internal rule, guideline, protocol, or similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion or a statement that such a rule,

guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

iv. Aetna is required to provide a full and fair review of any adverse determination which includes:

a. That a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits;

b. A document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information: (1) was relied upon in making the benefit determination; (2) was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; (3) demonstrates compliance with the administrative processes and safeguards required pursuant to the Regulations in making the benefit determination; or (4) constitutes a statement of policy or guidance with respect to the Plan concerning the denied benefit without regard to whether such statement was relied upon in making the benefit determination;

c. The Regulations further provide that for a review that takes into account all comments, documents, records and other information submitted by the claimant

relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination;

d. The Regulations further provide that, in deciding an appeal of any adverse determination that is based in whole or in part on a medical judgment that the appropriate named fiduciary shall consult with a healthcare professional who has appropriate training and experience in the field of medicine involved in the medical judgment;

e. The Regulations further require a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the Plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal nor the subordinate of such individual;

f. The Regulations further provide that a healthcare professional engaged for the purposes of a consultation for an appeal of an adverse determination shall be an individual who is neither the individual who was consulted in connection adverse benefit determination which was the subject of the appeal nor the subordinate of any such individual;

g. The Regulations further provide that, as to disability claims, the plan administrator "shall notify a claimant" of the plan's determination on review within a reasonable time not later than 45 days after

receipt of the claimant's request for review by the plan unless special circumstances require an extension of time for processing the claim, in which case written notice of the extension shall be furnished to the claimant prior to the termination of the initial 45 day period and in no event shall such extension exceed a period of 45 days from the end of the initial period.

31. Aetna denied Plaintiff a full and fair review of her claim for LTD benefits:

A. Aetna does not have, or with respect to Barr's claim and appeal, did not follow, administrative processes and safeguards designed to ensure and to verify that benefit determinations are made in accordance with governing plan documents and that, where appropriate, the Plan provisions have been applied consistently with respect to similarly situated claimants;

B. Aetna, does not have, or with respect to Barr's appeal, did not follow, the Regulations–which require that a review take into account all comments, documents, records and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination;

C. Barr, through counsel, requested that Aetna provide her with copies of all documents, records, or other information relevant to her claim, as that term is defined by ERISA Regulations. Aetna failed and refused to provide her with all such documents, records and other information, in violation of ERISA Regulations;

D. Aetna failed and refused to provide all relevant documents to Plaintiff for use in her appeal;

E. Defendant Aetna otherwise violated the Regulations.

32. Defendant's denial of Plaintiff's long-term disability benefits was arbitrary and capricious, an abuse of discretion, and a violation of the terms of The Policy.

33. This Court is required to review the termination of Plaintiff's benefits *de novo* because:

A. The Policy does not reserve discretion; and

B. Any discretionary clause in The Policy is void and unenforceable due to California Insurance Code section 10100.6 because The Policy:

i. provides life insurance or disability insurance coverage,

ii. to California residents;

iii. was to be renewed–i.e., continued in force – after The Policy's anniversary date,

iv. which was after the effective date of Insurance Code section 10110.6.

34. If, for any reason, this Court determines that review is not *de novo*, then this Court is required to review the termination of Plaintiff's LTD benefits with minimal deference to Aetna's determination because:

A. Aetna is both the administrator and the funding source of benefits for the Plan, and therefore has a conflict of interest;

B. Aetna utilized medical experts to review Plaintiff's claim and appeal who had a financial conflict of interest, and therefore did not provide a neutral, independent review process;

C. Aetna failed to comply with ERISA's procedural requirements regarding benefit claims procedures and full and fair review of benefit claim denials.

D. Aetna's decision-making process was affected by its economic

self-interest.

35. An actual controversy has arisen and now exists between Plaintiff, on the one hand, and Aetna, on the other hand with respect to whether Plaintiff is entitled to long-term disability benefits under the terms of The Policy.

36. Plaintiff contends, and Aetna disputes, that Plaintiff is entitled to LTD benefits under the terms of The Policy because Plaintiff contends at all relevant times that she was and is disabled under the terms of The Policy.

37. Plaintiff desires a judicial determination of her rights and a declaration as to which party's contention is correct, together with a declaration that Aetna is obligated to pay long-term disability benefits, under the terms of The Policy, retroactive to the first day her benefits were not paid, until and unless such time that Plaintiff is no longer eligible for such benefits under the terms of The Policy.

38. A judicial determination of these issues is necessary and appropriate at this time under the circumstances described herein in order that the parties may ascertain their respective rights and duties, avoid a multiplicity of actions between the parties and their privities, and promote judicial efficiency.

39. As a proximate result of Aetna 's wrongful conduct as alleged herein, Plaintiff was required to obtain the services of counsel to obtain the benefits to which she is entitled under the terms of The Policy. Pursuant to 29 U.S.C. section 1132(g)(1), Plaintiff requests an award of attorney's fees and expenses as compensation for costs and legal fees incurred to pursue Plaintiff's rights.

WHEREFORE, Plaintiff prays judgment as follows:

1. For declaratory judgment against Aetna, requiring Aetna to pay long-term disability benefits under the terms of The Policy to Plaintiff for the period to which she is entitled to such benefits, with prejudgment interest on all unpaid benefits, until Plaintiff attains the age of 67 years or until it is determined that Plaintiff is no longer eligible for benefits under the terms of The Policy.

2. For attorney's fees pursuant to statute against Aetna.

3. For costs of suit incurred.

4. For such other and further relief as the Court deems just and proper.

Date: March 28, 2017

s/Robert J. Rosati
ROBERT J. ROSATI
Attorney for Plaintiff,
SALLY BARR